STATE OF MAINE                SUPERIOR COURT
HANCOCK, SS.                  CIVIL ACTION
                             Docket No. CV-04-87


Curtis Wells et al.,
        Plaintiffs


        v.                               Decision and Judgment




Harbor House Community
Service Center,
        Defendant


        Hearing on the complaint was held on March 20, 2006. All parties were present
with counsel. Plaintiff Curtis Wells sustained personal injury when he was performing
contracting work on the premises occupied by defendant Harbor House Community
Service Center. He alleges that Harbor House failed to provide him with a reasonably
safe work environment and that this negligence resulted in his injuries. Wells' wife,
plaintiff Weslea Sidon, seeks recovery for loss of consortium. For the reasons set out
below, the court concludes that the plaintiffs have failed to establish that, if Harbor House
was negligent, its fault exceeded that of Wells.

        Harbor House is a community center that provides services and activities for local
residents. Harbor House leases the building from another entity and, pursuant to that
lease, has the exclusive right to its occupancy. An empty elevator shaft is located inside
the building. In the basement, the entrance into the shaft was completely covered with a
sheet of plywood that was screwed into the surrounding wall. The plywood had been in
place there since 1990. The bottom of the shaft is approximately four and one-half feet
below the level of the basement floor.

        Harbor House had hired a contractor to line the shaft with sheetrock. Wells is an
experienced carpenter and drywaller, and in October 2002, Harbor House' executive
director hired him to finish the shaft interior by applying tape and drywall compound to
the seams and joints. On October 10, Wells was working on the basement level. He had

                                        1

mostly finished painting a utility room, and, in preparation for the work he planned to do in the elevator shaft, he removed the plywood sheet that covered the opening into the shaft. Wells fell into the shaft and sustained significant personal injury when he landed on the shaft bottom. Wells, however, does not have a meaningful present memory of the circumstances of the fall, and no one witnessed the incident. He testified that he was maneuvering the sheet of plywood and stepped into the elevator shaft opening. He stated that he had to step into the opening so that he could move the plywood to the side and out of his workspace, but he also testified that he did not step into the opening intentionally. Thus, the way he entered the shaft and fell to the bottom remains unclear.

The court finds that the best evidence to shed light on the mechanism of the fall flows from the observations made by Scott Phelps, Harbor House's sports director. Phelps was in the building at the time of the accident. He responded immediately to the scene when he heard a third person yell to him. When he arrived at the scene in the basement, Wells was at the bottom of the shaft calling for help. Because no one else was present and because there is no separate evidence that anyone else arrived prior to Phelps, the court concludes that Phelps was the first responder to the site of the accident: it is not reasonable to conclude that if someone preceded Phelps to the scene, that person would have abandoned Wells without a trace.

When Phelps arrived at the elevator shaft in the basement, the sheet of plywood that had covered the elevator shaft opening was leaning against a wall five or six feet away from that opening. A set of elevated work lights was positioned to face the opening, and there was a pail of drywall compound located near the shaft and to the side of the opening. The lights were illuminated. The court places significance on the location of the plywood sheet and the way it rested against the wall when Phelps reached the area where Wells had been hurt. Because of its distance from the opening to the elevator shaft and because it was leaning upright against the hallway wall that ran perpendicular to the wall that included the elevator opening, the court is unable to conclude that Wells was holding the plywood when he fell into the elevator shaft. If he had held the plywood at that moment, it could not have ended up five or more feet away from the location where he fell, and it is unlikely that the plywood would have come to rest as it did. Its placement against the wall is much more suggestive of the outcome of

2

the purposeful act of moving the material out of the way. For these reasons, the court finds that Wells' fall into the elevator shaft was unrelated to the removal of the plywood from the shaft opening and the placement of the sheet against a nearby wall.

This finding also means that, because he already had set the plywood aside, Wells was in full position to see the physical configuration of the elevator shaft. As Phelps described the location of the lights in relation to the opening, Wells had placed the work lights so that they illuminated the shaft opening and the interior of the shaft. Wells' essential claim is that Harbor House was negligent because it failed to advise him, by warning signs or some other form of communication, that the bottom of the shaft was considerably below the level of the basement floor. For purposes of this analysis, the court assumes – without deciding – that Harbor House bears some fault for this omission. *See Williams v. Boise Cascade Corp.*, 507 A.2d 576, 577 (Me. 1986). Any such legal responsibility, however, cannot be the basis for liability, for two reasons.

First, Wells knew that the elevator shaft was located behind the plywood sheet that had covered its opening. When he removed the plywood, it fully exposed the interior of the shaft. Well's work lights were aimed toward the area of the opening, and he had turned on those lights prior to the accident. Wells was therefore able to see the condition and layout of the shaft interior. Whatever may have led to the fall, Wells put himself in a position where he exposed himself to a danger of which he had actual or constructive notice. This level of responsibility substantially exceeds any fault that may be attributed to Harbor House based on its failure to post warnings or otherwise warn Wells of a danger that was or should have been evident to him. Similarly, even if Harbor House should have modified the physical layout of the area, any such fault is overshadowed by Wells' own conduct.[1]

---

[1] To the extent that Wells may be seen to argue that Harbor House should have erected a barrier or made some other alteration of the access to the shaft, Wells faces a difficult contention. In fact, the plywood had the effect (presumably, an intended one) to prevent people from walking into the elevator shaft. Wells removed the sheet, as he had to do in order to gain access to the shaft area. The exposure of the shaft was thus inevitable as part of the work that Wells was hired to perform. Therefore, Wells' better argument, and the one he appears to pursue primarily, is that Harbor House was negligent because it failed to warn him of the layout of the shaft. For the reasons stated in the opinion, however, that argument is not persuasive.

Second, by one construction of Wells' testimony, he did not intentionally step into the elevator shaft.[2] Therefore, when he stepped into the shaft, he did not do so in reliance on an assumption, flowing inferentially from the absence of warning signs, that he could do so safely. Further, because the circumstances of the fall are clouded by uncertainty, one cannot argue persuasively that he would not have fallen if Harbor House had posted warning signs or otherwise advised him of the drop in the shaft below basement level, or if it had modified the physical condition of the shaft in anticipation of Wells' work there. Thus, the absence of warnings provided by Harbor House or any other failings attributable to it has no causal relationship to the accident.

For these reasons, the court need not address Wells' claim that Harbor House was negligent, because even if such a claim were meritorious, Harbor House has established that Well himself was negligent and that it was equal to or greater than any fault that can be assigned to Harbor House.

The entry shall be:

For the foregoing reasons, judgment is entered for the defendant. The defendant is awarded its costs of court.

Dated: April 28, 2006

_____
Justice, Maine Superior Court

**FILED &
ENTERED**

APR 2 8 2006

**SUPERIOR COURT
HANCOCK COUNTY**

---

[2] As is noted above, Wells offered that explanation as part of his larger account that he was trying to move the plywood sheet out of the way when he stepped into the shaft. Although the court has rejected the factual contention that he was holding the plywood when he fell, the remaining aspect of this account (that he did not intentionally step through the opening into the shaft) remains.

4